UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ERIC WALTER BISHTON,

        Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

        Defendant.

CAUSE NO.: 2:20-CV-136-TLS

## OPINION AND ORDER

The Plaintiff Eric Walter Bishton seeks review of the final decision of the Commissioner

of the Social Security Administration denying his applications for disability insurance benefits

and supplemental security income. For the reasons set forth below, the Court finds that reversal

and remand for further proceedings is required.

## PROCEDURAL BACKGROUND

The Plaintiff filed an application for disability insurance benefits on September 19, 2016,

and an application for supplemental security income on March 27, 2017, alleging disability

beginning at birth in 1994. AR 23, 33, ECF No. 14. The claims were denied initially and on

reconsideration, and the Plaintiff requested a hearing, which was held before the ALJ on October

5, 2018. *Id*. at 23. On January 15, 2019, the ALJ issued a written decision and found the Plaintiff

not disabled. *Id.* at 23–35. The Appeals Council denied review. *Id.* at 1–3. Thus, the ALJ's

decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th

Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On April 3, 2020,

the Plaintiff filed his Complaint [ECF No. 1], seeking reversal of the Commissioner's final

decision. The Plaintiff filed an opening brief [ECF No. 18], the Commissioner filed a response

brief [ECF No. 25], and the Plaintiff filed a reply brief [ECF No. 26].

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a

claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To be found

disabled, a claimant must have a severe physical or mental impairment that prevents him from

doing not only his previous work, but also any other kind of gainful employment that exists in

the national economy, considering his age, education, and work experience. 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine

whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial

gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff engaged

in substantial gainful activity from January through December 2015 but that there has been a

continuous 12-month period during which the Plaintiff did not engage in substantial gainful

activity. AR 25–26.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20

C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the "following

severe combination of impairments: Anxiety disorder, including panic disorder; depressive

---

[1] For convenience, the Court cites to the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income relevant to this case. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

disorder, including bipolar disorder and depression; Asperger's disorder/autism spectrum disorder, and attention deficit hyperactivity disorder (ADHD)." AR 26.

At step three, the ALJ considers whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). The ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 26.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can perform simple tasks, make simple work related decisions; deal with occasional changes in work processes and environment; can have occasional contact with coworkers and supervisors; no work with the general public; and no assembly line work.

AR 27.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work. AR 33.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of cart attendant, dishwasher, and warehouse worker. AR 34. The claimant bears the

burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and

4

must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff argues that the ALJ erred in evaluating the opinion testimony, in explaining the RFC assessment, and in analyzing the Plaintiff's subjective complaints. A common thread running through all the arguments is whether the ALJ properly considered the evidence related to Plaintiff's limitations in social functioning related to his diagnoses of autism and Asperger's syndrome and the effect of the limitations on his ability to work. The Court finds that remand is required for proper evaluation of the opinion and medical evidence and the Plaintiff's subjective allegations in relation to his social limitations in the RFC.

**A.      Treating Psychiatric Nurse Practitioner Gerald Lewis**

First, remand is required for the ALJ to properly weigh the opinion of the Plaintiff's longtime treating psychiatric nurse practitioner Gerald Lewis, MSN, CNS, APRN, B.C. On August 31, 2018, Mr. Lewis provided an opinion regarding the Plaintiff's functional limitations. The ALJ generally summarized Mr. Lewis' opinion as providing that "the deficits caused by the [Plaintiff's] alleged mental impairments [cause] restrictions of daily activities, difficulties in maintaining social functioning, and compromises his ability to maintain concentration and attention. The provider also indicated that the claimant would not be able to work long-term, full-time employment." AR 31. The ALJ then gave Mr. Lewis' opinion both "no weight" and

"little weight" on the bases that (1) Mr. Lewis is not an acceptable medical source under the regulations, (2) the statement that the Plaintiff cannot work full-time is not a medical opinion but rather an administrative finding reserved to the Commissioner, and (3) Mr. Lewis' opinion "is not consistent with the record as a whole" because (a) the Plaintiff worked after the alleged onset date and at substantial gainful activity levels in 2015 and (b) the medical records show the Plaintiff "had focused concentration, intact memory, and average IQ." *Id.* As to each basis, the ALJ has not created a logical bridge between the evidence and the weight given to the opinion.

1.    *Acceptable Medical Source*

The regulations provide that "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's impairments]." 20 C.F.R. § 404.1527(a)(1). Under the regulations in effect prior to March 27, 2017, a nurse practitioner is not an "acceptable medical source." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (defining "other sources" as including "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners").[2] However, an ALJ considers opinions from "medical sources" who are not "acceptable medical sources" using the same factors in § 404.1527(c)(1)–(6) that apply to "medical opinions." 20 C.F.R. § 404.1527(f)(1); *see also Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010) (recognizing that the opinions of "other medical sources" are weighed under the same factors); *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) (finding that the ALJ erred by not discussing several of the factors in weighing a

---

[2] Effective March 27, 2017, the regulations include in the definition of "acceptable medical source" a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ." 20 C.F.R. § 404.1502(a)(7). Mr. Lewis is an Advanced Practice Registered Nurse. Also, SSR 06-03p was rescinded for claims filed on or after March 27, 2017. *See* SSR 96-2p, 2017 WL 3928298, at *1 (Mar. 27, 2017). The Court recognizes that the Plaintiff filed his claim for supplemental security income prior to March 27, 2017, but filed his claim for disability insurance benefits on March 27, 2017.

treating physician's opinion). The factors are (1) the examining relationship; (2) the treatment relationship, including the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the provider's specialization, if any; and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). In fact, the regulations recognize that in considering these factors, "[d]epending on the particular facts in a case . . . an opinion from a medical source who is not an acceptable medical source . . . may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source." *Id.* § 404.1527(f)(1).

Although the ALJ correctly noted that Mr. Lewis is not an "acceptable medical source," the ALJ did not address several of the relevant factors that would appear to favor giving Mr. Lewis' opinion more weight. First, Mr. Lewis was the Plaintiff's primary mental health provider since 2006. AR 581. The record shows eighteen examinations from November 2014 through August 2018, approximately every three months. *See id.* at 500, 504, 508, 512, 516, 520, 524, 528, 536, 541, 546, 552, 583, 591, 598, 611, 615, 619. The ALJ did not discuss the length or nature of the treatment or the frequency of examinations in weighing the opinion. As for specialization, Mr. Lewis is a psychiatric nurse practitioner. *Id*. at 581. The ALJ did not acknowledge this specialization, noting only that he was a "treating provider." *Id.* at 31.

Regarding supportability, Mr. Lewis' treatment records are consistent with his opinion, another factor not discussed by the ALJ. In fact, Mr. Lewis' treatment records are the primary medical records cited throughout the ALJ's detailed recitation of the Plaintiff's treatment history. *See id.* at 28–30. However, at no point did the ALJ recognize that they are *Mr. Lewis*' treatment records. Rather, the ALJ introduced each record with phrases such as "the claimant presented for

an examination" or "the claimant presented for a psychiatric follow-up examination." *Id.* at 28–30. Importantly, the ALJ did not indicate that the medical findings in those records are any less reliable because Mr. Lewis is a nurse practitioner.

The treatment records show that Mr. Lewis and other treating providers observed the Plaintiff to be irritable and with poor social skills, often isolating himself, *id.* at 444, 520, 552, 615; to have poor concentration, *id.* at 445–49, 460, 483, 558–61, 581; to have an inappropriate affect, with blunt speech, and a blank stare, *id.* at 457, 483, 502, 516, 518, 522, 526, 543, 548, 554, 590, 595–97, 600–01, 613, 617, 621; to be anxious, depressed, irritable, despondent, with impaired insight and judgment, *id.* at 102, 129, 447–48, 481, 500, 502, 504, 506, 508, 510, 513–14, 516, 518, 520, 522, 526, 530, 534, 538, 543, 546, 548, 554, 583–85, 590–91, 593, 595–96, 598, 600–01, 611, 613, 615, 617, 619, 621; and to have slow speech and motor activity, *id.* at 588, 595, 597. Similarly, throughout school, his teachers and psychologists observed that he had irritability, poor social skills, poor concentration, inappropriate and flat affect, anxiety, and depression. *Id.* at 442, 448, 454–55, 457, 459–60, 558. Although the ALJ recited some of these favorable findings in the summarizing the evidence, the ALJ did not explain how she considered this evidence in relation to Mr. Lewis' opinion or the RFC for occasional contact with supervisors and coworkers.

Finally, the ALJ stated that Mr. Lewis' opinion is not consistent with the record as a whole. However, as addressed below, the ALJ discussed only the evidence that supports the RFC to the exclusion of the evidence supporting the Plaintiff's claim of disability.

2.     *Issue Reserved to the Commissioner*

The regulations provide that some opinions from medical sources, such as that the claimant is "disabled" or "unable to work," are not "medical opinions" but rather "administrative

8

findings" dispositive of the case reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Such statements from a medical source do "not mean that we will determine that you are disabled." *Id.* § 404.1527(d)(1). No "special significance" is given to such opinions from medical sources on issues reserved to the Commissioner. *Id.* § 404.1527(d)(3). Here, the ALJ discredited Mr. Lewis' opinion that the Plaintiff "would not be able to work long-term, full-time employment" on the basis that this is an issue reserved to the Commissioner and thus not entitled to any special weight. AR 31.

However, this is not an instance where the entirety of Mr. Lewis' opinion is a statement on the ultimate issue of the ability to work. The ALJ must still consider the functional limitations and explanations contained in the opinion. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (explaining that, even though a statement on the ultimate issue will not dictate a finding of disability, the statement must still be considered). Mr. Lewis' full-page opinion gives several specific examples, based on his history treating the Plaintiff, of the difficulties the Plaintiff has in the workplace. Mr. Lewis explains that the Plaintiff has "deficits in reciprocal social interactions" and "displays deficits in verbal and nonverbal communication—he continues to have difficulty [reading] body language, understanding tone, while often times taking a literal interpretation of the spoken word." AR 581. This results in restrictions of daily activities because the Plaintiff "would prefer to be alone rather than with others" as well as in maintaining social functioning. *Id.* As a result, the Plaintiff's ability to maintain concentration and attention is compromised. *Id.* Mr. Lewis explained:

> [The Plaintiff] cannot perform substantial work requiring more than occasional oral communication or requiring sales or negotiations. He cannot, on a sustained basis, respond appropriately to supervisors or the general public without feeling overwhelmed. He cannot, on a sustained basis, appropriately deal with changes in a routine work setting. Because of executive functioning deficits, he finds extreme difficulty in attempting to multi-task or make decisions.

*Id.*

As for understanding what is expected in the work setting, Mr. Lewis explained that the Plaintiff "can comprehend concepts but his [lack] of social skills lead to panic and anxiety while in the workplace." *Id.* Mr. Lewis noted the Plaintiff's lack of success in college, "suffering from depression and anxiety because of his failure at social connections and being unable to manage his academics, even with accommodations." *Id.* And, most specifically, Mr. Lewis explained that the Plaintiff "barely manages to work on a small, part-time basis through the interventions of pharmaceutical and behavior therapy [in] conjunction with the services received from his Medicaid Waiver. But his attempts at full-time work have proven too stressful and overwhelming for him." *Id*. Finally, Mr. Lewis explained that "[b]ecause autism is not 'curable' and all attempts thus far have been unsuccessful, Eric's long-term, full-time employability outcome remains unachievable." *Id*. The ALJ did not acknowledge any of these specific explanations given by Mr. Lewis or explain why they are not supported by the evidence of record.

3.    *Consistency with the Record as a Whole*

The third reason given by the ALJ for giving no/little weight to Mr. Lewis' opinion is that the opinion is "not consistent with the record as a whole." AR 31. In support, the ALJ cited the Plaintiff's work history and three findings from the medical records. *Id.* First, the ALJ is correct that the Plaintiff worked several jobs since 2011 including at substantial gainful activity levels in 2015. *See id.* at 31. However, the ALJ offered no further analysis of those work efforts. The Plaintiff argues that, for five of the seven jobs, he was terminated after several months as a result of his impairments. *See id.* at 50, 61, 65, 76–77, 101, 112, 334, 343–44, 366, 368, 394, 400–01, 403, 410–12, 415, 424, 504, 516. For example, the ALJ did not discuss the fact that the Plaintiff was terminated from his pipe fitting job because of problems appropriately interacting

and communicating. *Id.* at 334, 343–44, 403, 516. The remaining two jobs were at a grocery store and at a law firm. *Id.* at 57, 60–61, 64, 402. Again, the ALJ did not discuss that the grocery store was willing to reduce his hours and provide him with additional assistance or that the law firm was willing to work with him because his mother was employed at the firm and the firm understood the job to be temporary. *Id.* at 50, 62, 400–01, 403–04. The ALJ should have, but did not, address how Mr. Lewis' opinion is undermined by these unsuccessful work attempts, which appear to support the opinion. *See Kangail v. Barnhart*, 454 F.3d 627, 629–30 (7th Cir. 2006).

Second, as for the medical records, the ALJ referenced only those medical records that show the Plaintiff "had focused concentration, intact memory, and average IQ." AR 31. In support, the ALJ cited five of Mr. Lewis' treatment records from 2017 and 2018 and a February 2018 treatment record of Keith Wygle, MSW, LCSW. *Id.* (citing Exs. 5F/1–4; 6F/1–5; 7F/1–4; 13F/2–5, 6–8; 14/F2–5); *see id.* at 500–03, 541–45, 552–55, 583–89, 603–06. However, the ALJ ignored Mr. Lewis' additional findings in the same records that support the Plaintiff's social limitations as well as the concentration limitations that result from his social difficulties. *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) (reaffirming that "ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings" (citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014))). For example, the ALJ did not discuss the findings of abnormal mood, constricted affect, impaired insight, and mildly impaired judgment. *See* AR 502, 543, 554, 585, 605. Although the ALJ noted these favorable findings earlier in reciting the medical evidence, the ALJ did not engage with these favorable findings in weighing Mr. Lewis' opinion. In other words, the ALJ did not explain how these findings in the cited records are inconsistent with Mr. Lewis' opinion on the Plaintiff's social functioning, and, more importantly, the ALJ did not

identify any other objective medical evidence that is inconsistent with the opinion on these

issues. Notably, Mr. Lewis' treatment findings are consistent with the Plaintiff's subjective

complaints regarding difficulty focusing and approaching others. And, these findings are

consistent with the opinions of school psychologists Dr. Appleby in 2005 and Dr. Boutot in 2006

on the issue of the Plaintiff's social deficits and the impact on his functioning. *See id.* at 441–53,

557–61.

Finally, Mr. Lewis' opinion and treatment records regarding the Plaintiff's social

functioning appear consistent with the opinions of the two state agency psychological

consultants, whose opinions the ALJ gave "great weight" on the basis that they are "consistent

with the record as a whole." *Id.* at 30. In June 2017, Kari Kennedy, Ph.D. indicated on the

psychiatric review technique form under the "B" criteria for Listings 12.04, 12.06, and 12.10,

that the Plaintiff has moderate limitations for "interact with others" and "concentrate, persist, or

maintain pace." *Id.* at 102. Dr. Kennedy evaluated Plaintiff's "social interaction limitations" and

indicated in the worksheet section of the mental RFC assessment that the Plaintiff is moderately

limited in the ability to "maintain attention and concentration for extended periods," "complete a

normal workday and workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods," and

"accept instructions and respond appropriately to criticism from supervisors." *Id.* at 103–05. In

the narrative section, Dr. Kennedy opined that the Plaintiff is able to respond appropriately to

*brief* supervision and interactions with coworkers and work situations and may prefer to work in

a position that requires *minimal interaction* with others. *Id.* at 105.

In October 2017, Maura Clark, Ph.D., also found the same moderate limitations for

"interact with others" and "concentrate, persist, or maintain pace" on the psychiatric review

technique form. *Id.* at 130. In the mental RFC assessment, Dr. Clark found that the Plaintiff is moderately limited in the ability to "carry out detailed instructions," "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors," and "respond appropriately to changes in the work setting." *Id.* at 132–33. In the narrative section, Dr. Clark opined that the Plaintiff is able to respond appropriately to *brief* supervision and interactions with coworkers and work situations but did not include the opinion that the Plaintiff may prefer to work in a position that requires minimal interaction with others. *Id.* at 133–34. The ALJ gave both of these opinions great weight on the basis that they are consistent with the record as a whole. To the extent these opinions are consistent with Mr. Lewis' treatment records and Mr. Lewis' opinion, the ALJ failed to create a logical bridge to the decision to give Mr. Lewis' opinion no/little weight.

For all these reasons, remand is required for the ALJ to properly weigh Mr. Lewis' opinion.

**B.     Opinions of School Psychologists**

For similar reasons, remand is required for the ALJ to properly weigh the opinions of the school psychologists. The ALJ noted that Michael Appleby, Ph.D., described as a treating provider, opined in September 2005 that the Plaintiff has significant limitations in learning and interacting with others and would benefit from additional resources in the classroom, additional time for completion of assignments and assessments, and psychological support services for his issues with socialization. AR 32 (citing Ex. 1F/2–13); *see id.* at 441–53. The ALJ then noted that Amanda Boutot, Ph.D. also a treating provider, opined in April 2006 that the Plaintiff's

Asperger's syndrome affects his ability to understand and interact with others. *Id*. at 32 (citing Ex. 8F/2–5); *see id.* at 557–61. The ALJ gave "no weight" to these opinions on the basis that "they are not consistent with the record as a whole." *Id.* at 32.

The ALJ again relied on the fact that the Plaintiff had several jobs after his onset date, but again provided no discussion of the unsuccessful nature of those work attempts or the supported environment of the work attempt in 2015. The ALJ then noted that "[t]he claimant reported he has difficulty approaching others, but is able to be respectful and cooperative with authority figures;" that the Plaintiff is able to understand written and spoken instructions that are clearly provided to him; that during examinations he was consistently observed to have focused concentration and cooperative behavior, as well as intact memory and average intellectual functioning; that the Plaintiff reported at times "doing better" and "feeling less depressed"; and again that the Plaintiff had "focused concentration, intact memory, and average IQ." *Id.*

In addition to the same concerns discussed above regarding the ALJ's consideration of the Plaintiff's work history and citation of findings that support the RFC to the exclusion of findings favorable to the Plaintiff, the ALJ also appears to have rejected the psychologists' opinions based on what the ALJ interprets to be some normal psychological findings. However, the ALJ does not have the requisite medical expertise to interpret the clinical findings and weigh them against the expert medical interpretation of the psychologists. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014))). Finally, the ALJ reasoned that the two opinions "were provided well before the period at issue." AR 32. This statement is incorrect because the alleged onset date

is in 1994. This error is not harmless both in light of the other errors in weighing these opinions and because it is unclear how much weight the ALJ gave to this factor. Remand is required for proper consideration of these psychologists' opinions.

**C.      RFC and Subjective Complaints**

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

Here, the ALJ found that the Plaintiff can have occasional contact with coworkers and supervisors and no work with the general public. AR 27. In this administrative context, "occasionally" means "from very little up to one third" of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). However, as noted above and argued by the Plaintiff, both state agency reviewing psychologists opined that the Plaintiff can respond appropriately to only brief supervision and interaction with coworkers. *See* AR 105, 116, 133–34, 148–49. The ALJ

15

gave these opinions "great weight" but did not explain how these opinions support a finding that the Plaintiff can interact with supervisors and coworkers up to a third of the day. As argued by the Plaintiff, the limitation to "brief interaction" goes to the intensity or quality of the interaction while "occasionally" goes to quantity of time spent with the individuals. *Cf. Wartak v. Colvin*, No. 2:14-CV-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) (remanding because the ALJ did not explain how the limitation in the RFC to "occasional" contact with coworkers and supervisors accommodated a limitation to "superficial contact").

After properly weighing the medical opinions and considering all the relevant record evidence discussed above, the ALJ will have an opportunity on remand to properly address both the social limitations in the RFC as well as the Plaintiff's subjective complaints regarding his ability to interact with others and the affect the limitations in social interaction have on his ability to concentrate.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 18] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on November 29, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT